IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**HEIRS OF SL GENE THOMPSON**

v.                                                                                    **CAUSE NO:** 1:25cv29 TBM-RPM

**ESTATE OF MARY ALICE CABIBI THOMPSON (DECEASED)**

## COMPLAINT

COME NOW the Heirs of SL Gene Thompson ("the Heirs"), by and through counsel, and file this Complaint against the Estate of Mary Alice Cabibi Thompson ("the Estate") and would show unto the Court as follows:

### JURISDICTION

1.

This Court has jurisdiction of the parties and subject matter of this civil action as the Estate is open and pending in the Chancery Court of Pearl River County, Mississippi. The parties are diverse whereas all heirs reside outside the State of Mississippi. Further, the amount in controversy exceeds $75,001.

### PARTIES

2.

The Heirs are adult resident citizens of the United States, all residing outside the State of Mississippi, all of whom join in this Petition, by and through the lawful attorneys of record. All Heirs are identified under as beneficiaries of the Gene Thompson Lifetime Trust. The Heirs are specifically identified as Robert Wayne Thompson, Daryl Wayne Thompson, Sharon Lynn (Thompson) Galloway, Karen Angele (Thompson) Anderson, Steven Wayne Thompson, Brooke

1

Michelle Thompson, Kathryn Elizabeth Thompson, Colt Zane Thompson, Cade Wayne Thompson, Kyle Dean McWilliams, Paige Angele Anderson, Ashlyn Rose Anderson, Leah Kathryn Anderson, Amelia Kate Thompson and Klay Lagene Galloway. The Lawful Heirs are the biological children, grandchildren, and great grandchildren of Husband.

The Estate of Wife was opened and is pending in the Chancery Court of Pearl River County, Mississippi and may be served with process on Cynthia Cabibi Bird, Executrix of the Estate.

## FACTS

3.

On July 9, 1970, SL Gene Thompson ("Husband") and Mary Alice Cabibi ("Wife") entered into a marital contract ("prenuptial agreement") under Louisiana law in Orleans Parish. Said Agreement stated the parties' intent to keep their own properties separate and apart from the marital estate. At the time the prenuptial agreement was executed, the family, including the Heirs, were made aware of the prenuptial agreement. The marriage between Husband and Wife was Husband's second marriage. During the marriage, the Husband and Wife maintained residences in both Mississippi and Louisiana.

4.

Prior to July 1970, Husband had two children born to his first marriage, June LaGene Thompson and Robert Wayne Thompson. Wife had no children during her lifetime.

5.

From 1970 until his death, Husband verbally conveyed to his family and Heirs that he intended to leave his estate and property to his Heirs upon his death, but that Wife would maintain a life estate to ensure that she was taken care of until her death. All Heirs of Husband

understood and accepted that so long as Wife lived, she would enjoy the benefits ["a life estate/usufruct] of Husband's estate and property. The Heirs agreed to abide by Husband's stated wishes and never sought to challenge such wishes, nor did said Heirs have any reason to doubt what Husband or Wife stated.

6.

However, unbeknownst to the heirs, a document purporting to revoke the prenuptial agreement was drafted and signed purportedly on May 24, 1997. Of grave concern to the Heirs regarding this purported revocation, Husband was diagnosed with dementia in 1995. The revocation document was only witnessed by family and friends of the Wife, and was not properly notarized. At the time, the Husband and Wife resided primarily in McNeil, Mississippi and evidences an intent by the Wife and conspirators to conceal their actions from the Heirs, all of whom lived in Louisiana, – the Heirs would have no reason to search the records of St. Tammany Parrish for such a record. Upon information and belief, the Renouncement was drafted by persons affiliated with the Wife. The Husband had no reason to renounce the prenuptial agreement other than the undue influence and fraud of the Wife.

7.

In addition, pursuant to Louisiana Law, specifically LSA-C.C. Art. 2329[1], the desire to revoke or cancel the prenuptial agreement must be presented to a judge and approved as being in the best interest of the parties. Petitioners have been unable to locate any order approving the renouncement of the prenuptial agreement and allege that said Renouncement is invalid. Upon information and belief, the Heirs state that the Renouncement was not presented to a judge because no judge would have concluded that Renouncement was in the best interest of the parties

---

and due to Husband's mental state he was unable to execute a Renouncement unless coerced through the undue influence and fraud of the Wife.

8.

Another concern discovered after the death of the Wife, the signatures on the Will and Trust documents do not match the signatures of other documents signed by Husband during his lifetime. The Heirs are currently in the process of having Husband's signatures evaluated and may need additional records from the Estate of Husband to fully evaluate the signatures.

9.

Even after the alleged Renouncement, Husband and Wife continued to represent to the Heirs that the Estate of Husband would pass to the Heirs in total after the death of Wife, and that Wife would maintain a life estate. These representations demonstrate the ongoing intent of the Husband that the Heirs would ultimately inherit his estate and that he did not understand the effect of renouncement of the prenuptial agreement and further intent of Wife to deceive the Heirs. It further demonstrates Wife's ongoing fraud and concealment of her improper actions in exercising undue influence and coercion in procuring the Renouncement.

10.

Unknown to the Heirs, on September 9, 1999, a Will was drafted and purportedly signed by Husband disinheriting the Heirs, leaving all assets of his estate to Wife. The Will claims that Husband had provided for his "children, grandchildren, and great grandchildren elsewhere," however there exists no document, or other provision providing for these Heirs. Even after the Will was purportedly executed on September 9, 1999, both Husband and Wife continued to represent to the Heirs that upon Wife's passing, the entirety of Husband's Estate would be passed to the Heirs. Even so, no Heir was made aware of the Will, nor was any Heir ever notified of the

4

Trust.

11.

Husband died on December 30, 2006, and his estate was opened in Pearl River County, Mississippi – unknown to the Heirs. The Heirs continued to operate under the reasonable belief that Wife had a life estate in the properties and the Wife failed to inform them otherwise. Husband's Will was filed for probate and no Heir was given notice or a copy of the Will or any probate documents. At the time this Estate was opened, it had been represented by Wife to the Heirs that Wife would maintain a life estate in the property and receive lifetime income from the Estate. Based upon these representations, and the lack of actual notice of the proceedings due to Wife's fraud and concealment, no Heir sought to intervene to challenge the Will, as no Heir was made aware of the Will's contents or given notice of the Probate proceedings.

12.

On February 4, 2024, Wife passed away as a resident of Pearl River County, Mississippi. Upon Wife's death, the Heirs sought guidance regarding the cessation of Wife's life estate/ lifetime interest and passing of Husband's estate to the Heirs. For the first time, the Heirs learned that the Husband had purportedly renounced the prenuptial agreement and executed a Will which disinherited the Heirs and left his entire Estate to Wife. Aggrieved, the Heirs began to uncover the undue influence of Wife and her conspirators and the fraud.

13.

Despite being a Thompson Family (Heirs) business, Wife did not bequeath or leave to a single Heir one iota of the Husband's business or the Husband's estate. Instead, the Wife sought to leave the entirety of Husband's estate to Wife's family.

14.

After Wife's passing, the Heirs undertook a course of action to secure what they believed was their inheritance from Husband.

15.

Upon investigation, the Heirs discovered what was alleged to be a Trust, irrevocable upon Husband's death. Said Trust was filed as part of Husband's Estate wherein Wife was named Trustee and lifetime beneficiary. According to the Trust documents, upon Wife's death, the Heirs would become beneficiaries. **Exhibit A, Trust.** According to the Judgment in Husband's estate, "676.39 shares of common stock" were transferred into the irrevocable Thompson Lifetime Trust No. 1. However, upon Mary Alice's passing the Heirs have learned that despite Wife's duties as Trustee, Wife never notified any Heir of the Trust, Wife never performed any accountings, and Wife apparently converted all assets of the Trust for her own personal benefits.

16.

## BREACH OF FIDUCIARY DUTY AND LOYALTY

As the Trustee, Wife owed a fiduciary duty and duty of loyalty to the Heirs to notify the Heirs of the Trust, provide an accounting to the heirs, and maintain the assets of the Trust for the benefit of the Heirs. Despite these non-delegable duties, Wife never notified any Heir of the existence of the Trust. Wife never provided any accountings of the Trust. Wife squandered the assets of the Trust and converted all assets of the Trust for her own personal benefit – leaving nothing for the Heirs.

17.

"A trustee has a duty to administer the trust solely in the interest of the beneficiaries[,] ... [and] except in discrete circumstances, the trustee is strictly prohibited from engaging in

transactions that involve self–dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests." *In McWilliams v. McWilliams ex rel. Weathersby*, 994 So.2d 841, 849 (¶ 29) (Miss. Ct. App. 2008), the Court observed:

> The trustee owes a duty to the beneficiaries to administer the affairs of the trust solely in the interests of the beneficiaries .... This is called the duty of loyalty. ... In enforcing the duty of loyalty the court is primarily interested in improving trust administration by deterring trustees from getting into positions of conflict of interests.

(Quoting George Bogert, Trusts § 95 (6th ed. 1987)). This duty of loyalty has been codified in Mississippi Code Annotated section 91–9–609 (Supp. 2014), which states: "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries."

"A trustee has a duty to maintain clear, complete, and accurate books and records regarding the trust property and the administration of the trust, and, at reasonable intervals on request, to provide beneficiaries with reports or accountings." Restatement (Third) of Trusts § 83 (2007). Moreover, "[a] trustee who fails to keep proper records is liable for any loss or expense resulting from that failure," and the "failure to maintain necessary books and records may also cause a court in reviewing a judicial accounting to resolve doubts against the trustee." *Id.* at cmt. a(1).

18.

By draining the Trust, and/or never putting the assets into the Trust as direct by Husband and the Court, Wife breached her duty of loyalty and the fiduciary duty owed to the heirs. The Heirs are hereby owed and entitled to an accounting from Wife, all damages related to the Wife's breaches of the duties owed, punitive damages, attorney fees, and all other damages allowed by law.

In addition, as a result of the breach of the fiduciary duty and the other claims made herein, the Heirs were judicially excluded from challenging the probate of the Will. As a result,

7

the Heirs have been further damaged, having lost the peace of mind guaranteed by Mississippi law, in addition to losing their father and grandfather's legacy.

19.

CONVERSION

Wife converted the assets of the Trust to her own personal use. The Heirs are thereby entitled to all damages under Mississippi law for Conversion including punitive and Veasley damages.

20.

In addition, based upon the facts pled herein, the Wife's actions also constitute the torts of fraud, concealment, misrepresentation, and unjust enrichment under Mississippi law.

WHEREFORE, the Heirs respectfully ask this Court to grant them all the relief sought in this Complaint. And if mistaken in the relief sought, the Heirs ask this Court to grant them all relief to which they in law or equity are entitled.

RESPECTFULLY SUBMITTED this the 3rd day of February 2025.

**HEIRS OF SL GENE THOMPSON**

BY: /s/ Daniel M. Waide
Daniel M. Waide (MB#103543)

Daniel M. Waide (MSB#103543)
Michael V. Ratliff (MSB#4639)
Johnson, Ratliff & Waide, PLLC
1300 HARDY ST.
PO BOX 17738
HATTIESBURG, MS 39404
601-582-4553 (OFFICE)
601-582-4556 (FAX)
dwaide@jhrlaw.net